32 C.C.P.A. (Patents)

## In re KOKATNUR.

### Patent Appeal No. 4900.

Court of Customs and Patent Appeals.

Dec. 11, 1944.

Frederic P. Warfield, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 1, 2, 3, 5, and 21 in appellant's application for a patent for an alleged invention relating to improvements in anhydrous caustic alkalies.

Eight method claims were allowed by the tribunals of the Patent Office.

Claim 1 is illustrative of the appealed claims. It reads: "1. A composition of matter comprising finely divided anhydrous particles of caustic alkali, each particle being coated with a film of a compound that is water resistant, has a higher density than water, and is substantially inert to the caustic alkali."

Claim 2 differs from claim 1 in that it calls for a coating material of an aromatic halogen compound.

Claim 3 calls for a coating material of a halogen organic compound.

Claim 5 calls for a coating material of an organic compound.

Claim 21 calls for a coating material of an oleagenous compound.

The references are: Taylor, 270,998, Jan. 23, 1883; Reitz, 971,144, Sept. 27, 1910.

The patent to Taylor relates to the preparation and packing of caustic alkali. The patentee states that his invention comprises combining the alkali with a suitable material, such as a fatty, oily, or resinous substance, to make it safe and ready for handling and to prevent deliquescence, that is, deterioration by the absorption of moisture; that dust resulting from the grinding of the alkali is injurious to the health of an operator and destructive to the skin of those who come in contact with it unless some material, such as a fatty, oily, or resinous substance, is added to the alkali; that the difficulties of handling caustic alkali are overcome, and its disintegration, caused by the absorption of moisture, is prevented, by *enveloping* the particles of alkali with a coating of one of the substances mentioned; and that where the alkali is in powdered or ground form, the fatty, oily, or resinous substance is mixed with the alkali so that the latter can be packed in small quantities for the market.

The patent to Reitz discloses anhydrous caustic alkali in the form of crystals, and was cited because of that disclosure.

It appears from appellant's application that his particles of caustic alkali, in the form of crystals, are coated with "an oily, water immiscible, inert compound"; that organic halogen compounds, particularly those of the aromatic series, are especially valuable for such purpose; and that the aliphatic halogen compounds are not suitable because they react with the alkali. In his specification, appellant states that among the organic halogen compounds suitable for his purpose are:

"tetrachlorbenzene, pentachlorbenzene, hexachlorbenzene, dichlornaphthalene, trichlornaphthalene, and bromine derivatives of diphenyl, diphenylmethane and other Aromatic Hydrocarbons of single or multiple rings.

"All nitro compounds of suitable density and boiling point which are non-reactive to the caustic, as well as certain metal organic compounds, also meet the qualifications for use with the process. These include diiso-

butylmercury, dipropylmercury, potassium-xanthogenate, dipropyltindiodide, paradinitrobenzene, mononitrobenzene, and nitrotoluene."

It will be observed that claim 1 is not limited to organic halogen compounds, aromatic or otherwise.

It is not contended here that the halogen compounds, referred to in claims 2 and 3, are not old and well-recognized organic compounds.

It is contended by counsel for appellant that the patent to Taylor does not disclose that each of the particles of caustic alkali is coated with an organic coating material, such as an aromatic halogen compound; that it does not disclose a caustic alkali in crystalline form; that it does not disclose an anhydrous caustic alkali; that it does not disclose that each particle of the finely divided caustic alkali is homogeneously coated with an oleagenous compound which is non-reactive with caustic alkali, as called for in claim 21; that the *resinous substance* disclosed in the patent to Taylor reacts directly with caustic alkali; and that the patentee's product is used in the making of soap.

It may be observed in this connection that the patentee Taylor expressly states that the fatty or resinous substances might be such as enter into the composition of soap, should his product be used for that purpose, but that he did not wish to limit his disclosure to a product capable of saponification. It is apparent, therefore, that the patentee did not intend to limit his disclosure to fatty or oily substances which would react with the caustic alkali. The disclosure in the Taylor patent for coating materials is sufficiently broad to cover oleagenous (oily) organic compounds which are non-reactive with caustic alkali.

Inorganic compounds, as contrasted with organic compounds, are derived from something other than vegetable or animal substances. See Webster's New International Dictionary, and Funk & Wagnalls New Standard Dictionary.

The Taylor patent clearly refers to the *enveloping* of particles of alkali, which are anhydrous or substantially so, with the organic substances mentioned. It is true, as argued by counsel for appellant, that the patentee does not state that the particles of caustic alkali are homogeneously coated, as called for by appealed claim 21. However, it is not stated in appellant's specification that his particles of caustic alkali are

homogeneously coated, nor is there anything of record to indicate that if they were so coated they would be patentably distinguishable over the coated particles disclosed in the Taylor patent.

It is argued by counsel for appellant that the Taylor patent does not disclose particles of caustic alkali in the form of crystals. As hereinbefore noted, the patent to Reitz clearly contains such a disclosure.

That appellant's application involves invention is evident from the fact that the Primary Examiner allowed four claims and the Board of Appeals allowed four additional claims for appellant's process.

With reference to the limitation contained in claims 1, 3, and 5, that the coating material has a higher density or is heavier than water, the Primary Examiner said:

"Applicant has shown that use of liquids, as coating agents, which are heavier than the saturated caustic solution from which the caustic is precipitated, is advantageous in the *process* for which claims have been allowed. But this is no indication that the product which the claims define has unexpected advantages, or any advantage at all, for that matter. (Italics quoted.)

*"Moreover, it should be pointed out that the feature of the coating agent that is critical as to process, is that it is heavier than the saturated caustic solution; whereas these rejected product claims recite a coating agent which is heavier than water. This is not the same thing; saturated caustic solutions have specific gravities much higher than that of water.* (Italics ours.)

"The specific limitations as to the coating material are seen, therefore, to be wholly arbitrary and non-critical, productive of no new result, *and even without basis in the specification.* There is no reason why caustic crystals coated with a heavy liquid should have any different character from the same crystals coated to the same extent with a lighter liquid." (Italics ours.)

The Board of Appeals concurred in the quoted views of the Primary Examiner, and there is nothing of record or in the brief of counsel for appellant to indicate that the Primary Examiner was in error.

We concur in the conclusion reached by the tribunals of the Patent Office, that the appealed claims do not involve patentable subject matter. Accordingly, the decision of the Board of Appeals is affirmed.

Affirmed.